**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PRETERM-CLEVELAND** | : | Case No. 1:18-cv-109 |
| C/O B. JESSIE HILL | : | |
| ACLU of Ohio | : | Judge: |
| 4506 Chester Ave. | : | |
| Cleveland, OH 44103 | : | |
| | : | |
| **PLANNED PARENTHOOD** | : | |
| **SOUTHWEST OHIO REGION** | : | |
| C/O Gerhardstein & Branch, LPA | : | **VERIFIED COMPLAINT FOR** |
| 441 Vine Street, Suite 3400 | : | **DECLARATORY AND INJUNCTIVE** |
| Cincinnati, OH 45202 | : | **RELIEF** |
| | : | |
| **WOMEN'S MED GROUP** | : | |
| **PROFESSIONAL CORPORATION** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 441 Vine Street, Suite 3400 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **ROSLYN KADE, M.D.** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 441 Vine Street, Suite 3400 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| **PLANNED PARENTHOOD** | : | |
| **GREATER OHIO** | : | |
| C/O Melissa Cohen | : | |
| Planned Parenthood Federation of America | : | |
| 123 William Street, Floor 9 | : | |
| New York, NY 10038 | : | |
| | : | |
| **Plaintiffs,** | : | |
| vs. | : | |
| | : | |
| **LANCE HIMES** | : | |
| **Director, Ohio Department of Health** | : | |
| 246 N. High Street | : | |
| Columbus, OH 43215 | : | |
| | : | |
| **JOSEPH T. DETERS** | : | |
| **Hamilton County Prosecutor** | : | |
| 230 E. Ninth Street, Suite 4000 | : | |
| Cincinnati, OH 45202 | : | |

| | |
|---|---|
| **MICHAEL C. O'MALLEY** | : |
| **Cuyahoga County Prosecutor** | : |
| Justice Center Bld. Floor 8th and 9th | : |
| 1200 Ontario Street | : |
| Cleveland, Ohio 44113 | : |
| | : |
| **MAT HECK, JR.** | : |
| **Montgomery County Prosecutor** | : |
| 301 W. Third St. | : |
| P.O. Box 972 | : |
| Dayton, OH 45402 | : |
| | : |
| **RON O'BRIEN** | : |
| **Franklin County Prosecutor** | : |
| 373 S. High Street, 14th Floor Columbus | : |
| OH 43215 | : |
| | : |
| **KIM G. ROTHERMEL, M.D.** | : |
| **Secretary, State Medical Board of Ohio** | : |
| 30 East Broad Street, 3rd Floor | : |
| Columbus, Ohio 43215 | : |
| | : |
| **BRUCE R. SAFERIN, D.P.M.** | : |
| **Supervising Member, State Medical** | : |
| **Board of Ohio** | : |
| 30 East Broad Street, 3rd Floor | : |
| Columbus, Ohio 43215 | : |
| | : |
| | : |
| | : |
| **Defendants.** | : |

## I.     PRELIMINARY STATEMENT

1.     This civil rights case pursuant to 42 U.S.C. § 1983 challenges Ohio House Bill 214 of the 132nd General Assembly ("H.B. 214" or "the Act"), which is Ohio's latest attempt to prevent women from exercising their constitutionally protected right to abortion.

2.     H.B. 214 was signed into law by Governor John Kasich on December 22, 2017, with an effective date of March 22, 2018.

3. H.B. 214 criminalizes performing an abortion if the person performing the abortion knows that one reason for the woman's decision to terminate her pregnancy is a fetal indication of Down syndrome.

4. Plaintiffs challenge H.B. 214 because it undermines their mission to honor and support the decisions their patients make, whether it is to continue or to end a pregnancy. For many families, the right decision is to continue the pregnancy and parent a child with Down syndrome; for some, it is to give birth and place the child for adoption; and for others, it is abortion. In the case of patients who have received a positive test for fetal Down syndrome, and who choose not to continue the pregnancy, H.B. 214 prevents Plaintiffs from providing nonjudgmental, medically appropriate care. H.B. 214 wrests from those patients and their families the ability to decide what is right for them. Yet H.B. 214 provides not one whit of support for children and adults with Down syndrome, or for their parents. All it does is move the locus of personal, medical decision-making from the patient to the legislature, in violation of the U.S. Constitution.

5. By striking at the very heart of the Fourteenth Amendment right to privacy and autonomy, H.B. 214 imposes an unconstitutional undue burden on the abortion right, and Plaintiffs are therefore entitled to declaratory and injunctive relief against its enforcement.

## II. JURISDICTION AND VENUE

6. Jurisdiction over Plaintiffs' claims is conferred on this Court by 28 U.S.C. § 1331, §§ 1343(a)(3) and (a)(4).

7. Venue is proper in this division under 28 U.S.C. § 1391.

### III.     PARTIES

8.     Plaintiff Preterm-Cleveland ("Preterm"), a nonprofit corporation organized under the laws of the State of Ohio, has operated a health care clinic in Cleveland, Ohio since 1974. Preterm provides a range of reproductive health services, including family planning services; pregnancy testing; testing and treatment for sexually transmitted diseases; and medical and surgical abortion services. Preterm provides medication abortions through 70 days LMP and surgical abortions up to 21 weeks 6 days of pregnancy as dated from the first day of the woman's last menstrual period ("LMP"), which is the same as twenty weeks postfertilization. The physicians who perform abortions at Preterm are threatened with criminal penalties, loss of their medical license, and civil suits if they violate the Act. Preterm is also threatened with criminal liability by the Act. Preterm sues on its own behalf; on behalf of its current and future medical staff, servants, officers, and agents; and on behalf of its patients.

9.     Plaintiff Planned Parenthood Southwest Ohio Region ("PPSWO") is a non-profit corporation organized under the laws of the State of Ohio. It and its predecessor organizations have provided care in Ohio since 1929. PPSWO provides a broad range of medical services to women and men at seven health centers in Southwest Ohio, including: birth control, annual gynecological examinations, cervical pap smears, diagnosis and treatment of vaginal infections, testing and treatment for certain sexually transmitted diseases, HIV testing, pregnancy testing, and abortions. PPSWO provides surgical abortions up to 21 weeks 6 days of pregnancy LMP and medication abortions through 70 days LMP. The physicians who perform abortions at PPSWO are threatened with criminal penalties, loss of their medical license, and civil suits if they violate the Act.  PPSWO is also threatened with criminal liability by the Act. PPSWO sues on its own

behalf; on behalf of its current and future medical staff, servants, officers, and agents; and on behalf of its patients.

10. Plaintiff Women's Medical Group Professional Corporation ("WMGPC") owns and operates a facility known as Women's Med Center of Dayton ("WMCD") in Kettering, Ohio. WMGPC and its predecessors have been providing abortions for women in the Dayton area since 1975. WMCD provides surgical and medication abortions, pregnancy testing, and birth control health care services to women. WMCD provides surgical abortions up to 21 weeks 6 days LMP and medication abortions through 70 days LMP. The physicians who perform abortions at WMCD are threatened with criminal penalties, loss of their medical license, and civil suits if they violate the Act. WMGPC is also threatened with criminal liability by the Act. WMGPC sues on its own behalf; on behalf of its current and future medical staff, servants, officers, and agents; and on behalf of its patients.

11. Plaintiff Roslyn Kade, M.D. ("Dr. Kade") is a physician licensed to practice medicine in Ohio since 1987. Dr. Kade performs surgical abortions up to 21 weeks 6 days LMP, provides medication abortions through 70 days LMP, provides birth control, treats certain sexually transmitted diseases, and provides other health care services to women in the Greater Cincinnati and Greater Dayton regions. Dr. Kade is the Medical Director at PPSWO, where she occasionally provides abortions, and she also provides abortions at WMCD.

12. Plaintiff Planned Parenthood Greater Ohio ("PPGOH") is a non-profit corporation organized under the laws of the State of Ohio. PPGOH provides a broad range of medical services to women and men at nineteen health centers throughout Ohio, including birth control, annual gynecological examinations, cervical pap smears, diagnosis and treatment of vaginal infections, testing and treatment for certain sexually transmitted diseases, HIV testing, pregnancy

5

testing, and abortions. PPGOH provides surgical abortions up to 19 weeks 6 days LMP and medication abortions through 70 days LMP. The physicians who perform abortions at PPGOH are threatened with criminal penalties, loss of their medical license, and civil suits if they violate the Act. PPGOH is also threatened with criminal liability by the Act. PPGOH sues on its own behalf; on behalf of its current and future medical staff, servants, officers, and agents; and on behalf of its patients.

13. Defendant Lance Himes is the Director of the Ohio Department of Health, which is responsible for promulgating rules to assist in compliance with H.B. 214. He is charged with administering the Department of Health and with enforcing the abortion reporting requirements in Ohio Revised Code § 3701.79. He is sued in his official capacity.

14. Defendant Joseph T. Deters is the Hamilton County Prosecutor and is charged with enforcing the criminal provisions contained in H.B. 214 within his jurisdiction. He is sued in his official capacity.

15. Defendant Michael C. O'Malley is the Cuyahoga County Prosecutor and is charged with enforcing the criminal provisions contained in H.B. 214 within his jurisdiction. He is sued in his official capacity.

16. Defendant Mat Heck, Jr. is the Montgomery County Prosecutor and is charged with enforcing the criminal provisions contained in H.B. 214 within his jurisdiction. He is sued in his official capacity.

17. Defendant Ron O'Brien is the Franklin County Prosecutor and is charged with enforcing the criminal provisions contained in H.B. 214 within his jurisdiction. He is sued in his official capacity.

18. Kim G. Rothermel, M.D., is the Secretary of the State Medical Board of Ohio, which is charged with enforcing the physician licensing penalties contained in H.B. 214. She is sued in her official capacity.

19. Bruce R. Saferin, D.P.M., is the Supervising Member of the State Medical Board of Ohio, which is charged with enforcing the physician licensing penalties contained in H.B. 214. He is sued in his official capacity.

## IV. FACTS

### A. Abortion Practice and Safety

20. Women seek abortion for a variety of deeply personal reasons, including familial, medical, and financial. Some women have abortions because they conclude that it is not the right time in their lives to have a child or to add to their families; some to preserve their life or health; some because they receive an indication or diagnosis of a fetal medical condition or anomaly; some because they have become pregnant as a result of rape; and others because they choose not to have children at all. Some women do not feel they have the resources—financial, medical, educational, or emotional—to provide lifelong care to a child with special needs. The decision to terminate a pregnancy for any reason is motivated by diverse, complex, and interrelated factors that are intimately related to the individual woman's values and beliefs, culture and religion, health status and reproductive history, and resources and economic stability.

21. Approximately one in four women in this country will have an abortion by age forty-five. A majority of women having abortions (61%) already have at least one child, while most (66%) also plan to have a child or additional children in the future.

22. Women in Ohio may obtain two types of abortion: medication abortion and surgical abortion. Medication abortion is a method of ending an early pregnancy by taking

medications that cause the woman to undergo a process similar to an early miscarriage. Plaintiffs provide medication abortion through 70 days LMP, which is a previability point in pregnancy.

23. Surgical abortion involves utilizing instruments to remove the products of conception from the uterus. Despite its name, surgical abortion is not a typical surgical procedure: it does not involve any incision. Surgical abortion is available in Ohio up to 21 weeks, 6 days LMP (or 20 weeks postfertilization), which is a previability point in pregnancy.

24. Most abortions are performed during the first trimester of pregnancy, when the pregnancy is at or less than fourteen weeks LMP.

25. Under Ohio law, a woman who wishes to have an abortion must visit the abortion provider at least 24 hours before the procedure will be performed. During that initial visit, she must receive certain information, as well as an ultrasound and the opportunity to see or hear the embryonic or fetal heart tone, and she must give her informed consent to the procedure.

26. During each patient's initial visit, Plaintiffs provide non-directive patient education, which means they listen to, support, and inform the patient, without directing her course of action. That process is designed to ensure that patients are well-informed with respect to all of their options, including terminating the pregnancy; carrying the pregnancy to term and parenting; and carrying to term and placing the baby for adoption. In addition, the process is designed to ensure that the woman's choice is voluntary and not coerced.

27. Although most of Plaintiffs' patients disclose at least some information about the reasons they are seeking an abortion during these non-directive discussions, Plaintiffs do not require that patients disclose any or all of their reasons for seeking an abortion.

28. Plaintiffs are aware that a small percentage of their patients seek abortions based solely or in part on a prenatal diagnosis of Down syndrome or, in rare cases, a prenatal test

indicating a likelihood of Down syndrome. These patients typically come to the clinic only after undergoing extensive counseling with a high-risk obstetrician-gynecologist ("OB/GYN"), also known as a specialist in Maternal-Fetal Medicine ("MFM"), and/or a genetic counselor.

### B. Down Syndrome

29. Down syndrome is the common name for a genetic anomaly, also known as Trisomy 21, that results from a trisomy (i.e., an extra copy, whether full or partial) of the twenty-first chromosome. The range of medical conditions and abilities can vary widely for people with Down syndrome, although this cannot be predicted before birth. Many people with Down syndrome require significant care sometimes stretching into adulthood.

30. There are various screening and diagnostic tests available to detect genetic, chromosomal, or structural anomalies, including Down syndrome. "Screening" tests cannot diagnose any particular anomaly, but rather indicate a likelihood that one or more anomalies exist. These screening tests usually check for a range of anomalies at the same time. By contrast, "diagnostic" tests diagnose the existence or non-existence of particular anomalies with near certainty.

31. Screening tests for fetal anomalies are available as early as 10 weeks LMP. One diagnostic test, known as chorionic villus sampling ("CVS"), also may be performed as early as 10 weeks LMP; others, such as amniocentesis and ultrasound examination, are not available until 15 weeks LMP or later. Many women will not receive a confirmed diagnosis of Down syndrome until well into the second trimester of pregnancy because amniocentesis, which tests for a wider range of conditions and is more widely available than CVS, is not available until the second trimester.

32. The American College of Obstetricians and Gynecologists ("ACOG"), which is the preeminent professional association for OB/GYNs, recommends that all women should be counseled about prenatal genetic screening and diagnostic testing options as early as possible in the pregnancy, ideally at the first prenatal visit. ACOG recommends that all women, regardless of age, be offered the option of screening or diagnostic testing for fetal genetic disorders. ACOG also recommends that women with positive screening test results be offered further counseling and diagnostic testing.

### C. Impact of HB 214

33. H.B. 214 amends the criminal provisions of the Ohio Revised Code to make it a crime to perform an abortion if the person providing the abortion knows that one reason the woman seeks an abortion is fetal Down syndrome.

34. Specifically, H.B. 214 adds a provision to the Ohio Revised Code prohibiting any person from "purposely perform[ing] or induc[ing] or attempt[ing] to perform or induce an abortion on a pregnant woman if the person has knowledge that the pregnant woman is seeking the abortion, in whole or in part, because of" a test result indicating Down syndrome, a prenatal diagnosis of Down syndrome, or "[a]ny other reason to believe" that the fetus has Down syndrome. Ohio Rev. Code § 2919.10(B).

35. Violation of H.B. 214's prohibition constitutes a fourth degree felony. Ohio Rev. Code § 2919.10(C).

36. Any physician who violates H.B. 214 is subject to mandatory license revocation by the state medical board, and is further subject to a civil suit by "any person" that "sustains injury, death, or loss to person or property as the result of the" abortion or attempted abortion. Ohio Rev. Code § 2919.10(D)-(E).

37. H.B. 214 adds section 2919.101 to the Ohio Revised Code. Section 2919.101 requires the attending physician to state in his or her abortion report to the Ohio Department of Health that he or she "does not have knowledge that the pregnant woman was seeking the abortion, in whole or in part" because of a test result indicating Down syndrome, a prenatal diagnosis of Down syndrome, or "[a]ny other reason to believe" that the fetus has Down syndrome. Ohio Rev. Code § 2919.101(A).

38. H.B. 214 also requires the Department of Health to promulgate rules "to assist in compliance with" the requirements of section 2919.101, within ninety days of H.B. 214's effective date—that is, no later than June 21, 2018. Ohio Rev. Code § 2919.101(B).

39. Ohio Revised Code section 3701.79, as amended by H.B. 214, likewise mandates that the attending physician include in his or her abortion report, "insofar as the patient makes the data available that is not within the physician's knowledge," a "[w]ritten acknowledgement … that the pregnant woman is not seeking the abortion, in whole or in part, because of" a test result indicating Down syndrome, a prenatal diagnosis of Down syndrome, or "[a]ny other reason to believe" that the fetus has Down syndrome. Ohio Rev. Code § 3701.79(C)(7).

40. H.B. 214 contains no exception allowing the abortion to be performed when it is necessary to preserve the health or life of the woman, if the physician knows any "part" of the woman's decision for the abortion is also related to a test result indicating Down syndrome, a prenatal diagnosis of Down syndrome, or "[a]ny other reason to believe" that the fetus has Down syndrome.

41. Under Ohio Revised Code section 2901.22, which was not amended by H.B. 214, a "person" is considered to have "knowledge of circumstances when the person is aware that such circumstances probably exist." Section 2901.22 also provides that "[w]hen knowledge of

11

the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

42. If H.B. 214 takes effect, Plaintiffs will be unable to provide an abortion for a woman if they know that fetal Down syndrome is at least "part" of her reason for terminating the pregnancy. Thus, H.B. 214 will completely ban these patients from obtaining an abortion in Ohio. Plaintiffs will cease providing care in these circumstances solely to avoid the civil, criminal, and disciplinary sanctions imposed by H.B. 214.

43. If Plaintiffs' patients who are affected by H.B. 214 can no longer obtain an abortion in Ohio, they will be forced to travel out of the state to get the care they need, which can lead to unnecessary delay, and some will be unable to obtain an abortion at all.

44. While abortion is an extremely safe procedure, the risks associated with abortion increase as the pregnancy progresses.

45. Some of Plaintiffs' patients will be unable to travel out of state to access abortion care and will therefore be forced to carry to term against their will.

46. Being forced to continue a pregnancy against her will can pose a risk to a woman's physical, mental, and emotional health, and even her life, as well as to the stability and wellbeing of her family, including her existing children.

47. Plaintiffs wish to continue providing safe and nonjudgmental abortion care to patients who have knowingly and voluntarily decided to terminate their pregnancies, regardless of the particular reason for the decision.

## V. CLAIMS FOR RELIEF – 42 U.S.C. § 1983

### COUNT I
### (Substantive Due Process)

48. The allegations of paragraphs 1 through 57 are incorporated as though fully set forth herein.

49. By prohibiting previability abortions based on the woman's reason for seeking the care, the Act violates the rights to liberty and privacy secured to Plaintiffs' patients by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

A. Issue a declaratory judgment that Ohio Revised Code §§ 2919.10, 2919.101, and 3701.79, as amended by House Bill 214, are facially unconstitutional.

B. Issue a preliminary and permanent injunction against Defendants and all those in active concert and participation with them from enforcing the Act;

C. Award to Plaintiffs reasonable costs, expenses, and attorney fees;

D. Award such other and further relief as this Court shall deem just and reasonable.

Respectfully submitted,

/s/ B. Jessie Hill

Alexa Kolbi-Molinas (admission *Pro Hac Vice pending*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
akolbi-molinas@aclu.org
*Counsel for Plaintiff Preterm*

B. Jessie Hill #0074770
Cooperating Counsel for the ACLU of Ohio Foundation
ACLU of Ohio
4506 Chester Ave.
Cleveland, OH 44103
(216) 368-0553
(216) 368-2086 (fax)
bjh11@cwru.edu

13

Carrie Y. Flaxman (admission *Pro Hac Vice pending*)
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
(202) 973-4800
(202) 296-3480 (fax)
carrie.flaxman@ppfa.org
*Counsel for Plaintiffs Planned Parenthood of Greater Ohio and Planned Parenthood Southwest Ohio Region*

Melissa Cohen *(admission Pro Hac Vice pending)*
Planned Parenthood Federation of America
123 William Street, Floor 9
New York, NY 10038
(212) 541-7800
(212) 247-6811 (fax)
melissa.cohen@ppfa.org
*Counsel for Plaintiffs Planned Parenthood of Greater Ohio and Planned Parenthood Southwest Ohio Region*

Freda J. Levenson #0045916
ACLU of Ohio Foundation, Inc.
4506 Chester Avenue
Cleveland, OH 44103
(216) 472-2220
(216) 472-2210 (fax)
flevenson@acluohio.org
*Counsel for Plaintiff Preterm*

*Counsel for Plaintiff Preterm*

Jennifer L. Branch # 0038893
*Trial Attorney for Plaintiffs*
Alphonse A. Gerhardstein # 0032053
Gerhardstein & Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, OH 45202
(513) 621-9100
(513) 345-5543 (fax)
agerhardstein@gbfirm.com
jbranch@gbfirm.com
*Counsel for Plaintiffs Planned Parenthood Southwest Ohio Region, Roslyn Kade, M.D., and Women's Med Group Professional Corporation*