# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| PRETERM-CLEVELAND, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-109 |
| | ) Judge Timothy S. Black |
| LANCE HIMES, DIRECTOR, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF LEESHA THROWER

I, Leesha Thrower, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the following is true and correct:

1. My name is Dr. Leesha Thrower. My Ph.D. is in Communication Studies. I am a professor and Chair of the Department of Communication at Cincinnati State Technical and Community College.

2. I am the mother of three children. My daughter J., who is the youngest, has Down syndrome. She is six years old.

3. I am one of the leaders of the African American Family Network of the Down Syndrome Association of Greater Cincinnati, and am frequently an invited speaker at colleges and universities, conferences, and other gatherings on Down syndrome related topics.

4. I love J. with my whole heart, and I am immeasurably glad that she is in my life. A parent can love her special-needs child and still be pro-choice.

1

5. Ohio's Down syndrome abortion ban, H.B. 214, is a thinly-veiled attempt to restrict abortion rights. In passing this bill, Ohio politicians have exploited stereotypes of children with Down syndrome as a strategy to further diminish reproductive rights in Ohio. I take strong exception to these legislators using my child as their political tool to promote their own political agenda.

6. This bill does nothing to help or protect my daughter or other people with Down syndrome. If Ohio politicians truly had an interest in the wellbeing of the community they purport to care about, they would address their needs – which, in Ohio, are unmet on a vast scale. Ohio politicians want to force women to give birth, but do not want to offer needed resources to families with children with special needs.

7. My daughter J, like many other children with Down syndrome, would benefit from extended school year services in order to limit regression and continue progress on emerging skills. The burden of that financial cost is solely on the school district, and the fact is that many districts simply do not have the financial resources for that additional expense. To attempt to mitigate regression and continue to work on my daughter's emerging skills, I researched summer enrichment programs, only to discover that they were all cost prohibitive. So J. had to go without this needed intervention.

8. J, like many other children with Down syndrome, lacks fine-motor coordination, and needs extra help with writing skills But a summer workshop for occupational therapy is also impossibly costly for our family, so J will go without that needed therapy as well.

9. The State should be subsidizing these programs for children with Down syndrome, or subsidizing school districts to provide them. But the State is not addressing this, or putting forth legislation to provide these necessary services to students.

10. J. also needs speech therapy, for which my health care plan provides only limited coverage, inadequate for her needs. As a result, J. receives insufficient therapy to help develop her expressive and receptive communication. The State should be making this therapy accessible to families with children who need these services.

11. The Ohio General Assembly, if it cared about children with Down syndrome, would work on bills to guarantee affordable health insurance coverage for the barrage of testing that children with Down syndrome need, for occupational therapy, physical therapy, sleep studies, x-rays for hips and necks, ear tubes and other medical care.

12. It should also be working on the need for inclusion in schools. J. needs a classroom aide in order to access the general education curriculum taught in her classroom. This enables her to be educated with her peers and spend less time being pulled out for special education services. Aides are costly and there is no guarantee that a classroom aide will always be available for her.

13. After high school, J. will have few options for post-secondary education that would lead to an industry-recognized certificate or degree to enable her to be gainfully employed and independent. The State should be debating how to best serve these students after graduation, so that they are paid a fair, living wage and can contribute not only to their own lives, but to society.

14. I have personally experienced a child care center refusing to admit my daughter solely because she has Down syndrome; unfortunately this experience is not unique to me, and many of our friends in the Down syndrome community have faced this discrimination. If the State really cared about discrimination against people with Down syndrome, they would be drafting laws that prevent exclusion – actual discrimination.

15. Instead of helping anyone with Down syndrome, H.B. 214 will have harmful effects. It will make parents afraid to access prenatal care for fear that they will be forced to carry an unwanted pregnancy to term. But families need preparation – emotionally, medically, and practically – for the birth of an infant with Down syndrome. A pre-natal diagnosis, for example, can allow planning for early surgical intervention if, for example, a fetus has a heart malformation (a condition that is more common for individuals with trisomy 21 than for others.)

16. Having a child with Down syndrome influences every aspect of my life. It is my normal, and I wouldn't give it up for anything. My goal as a mother and an advocate in the Down syndrome community is to live my life in a way that makes future mothers less afraid – without dictating the choices they can make. What unites all of us in the Down syndrome community is the desire for our loved ones to have all resources necessary to lead extraordinary lives. This disingenuous legislation does nothing to further that cause.

_____
Leesha Thrower

3-8-18
_____
Date signed

4